UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HARMONY NASON,<br><br>                    Plaintiff,<br><br>        v.<br><br>UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, MARCIA FUDGE, in her official capacity as Secretary of U.S. Department of Housing and Urban Development; DOES 1 to 50,<br><br>                    Defendants. | CASE NO. 2:22-cv-00887-RAJ<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Harmony Nason has filed an "Emergency Motion for Preliminary Injunction and Temporary Restraining Order." Dkt. 12. Plaintiff seeks an order directing the United States Department of Housing and Urban Development ("HUD") to issue an "enhanced voucher" and restrain her eviction. *Id.* Plaintiff sued Defendants HUD and Marcia Fudge, in her official capacity as Secretary of U.S. Department of Housing and Urban Development (collectively, the "Federal Defendants"). Defendants oppose Plaintiff's motion for lack of subject matter jurisdiction, standing, and for failure to state a viable claim. Dkt. 19. Plaintiff filed an "Emergency Motion to Amend Motion for Preliminary Injunction," which the Court has construed as her reply. Dkt. 21. Defendants filed a response. Dkt. 22.

Having considered the parties' submissions and balance of the record, the undersigned recommends that the motion be denied as Plaintiff lacks standing to bring her contractual claims

REPORT AND RECOMMENDATION - 1

against the Federal Defendants and her remedy, if any, is in the Snohomish County Superior Court where her eviction proceedings are occurring. Alternatively, Plaintiff has failed to show a likelihood of success on the merits of her claims.

## BACKGROUND

In May 1992, HUD financed the acquisition of three single-family homes throughout Snohomish County by Harmony House East Association,[1] a non-profit organization ("Harmony House") ("the Project"). The financing included an initial grant and continuing rental subsidy for the Project to operate. The financing also involved a mortgage held by HUD and a Regulatory Agreement. Dkt. 20, Declaration of Adela Escalante, Branch Chief for HUD, Office of Multifamily Housing, Property Disposition Division ("PD"). PD is responsible for managing and disposing of multifamily housing projects, through foreclosure sale, that are subject to a mortgage held by HUD. *Id.*

The Project provided housing and supportive services to low-income, chronically mentally ill tenants. The Project had 12 units scattered throughout the single-family homes located at 514 Powell Street, 16018 Dennis Way, and 12925 182nd Ave SE. Each address provided a group-home living for 4 tenants. Plaintiff moved into the Powell Street property around 2007. Dkt. 1; Dkt. 20, Escalante Decl., ¶¶ 5-6. Plaintiff did not receive HUD Section 8 assistance or any Section 8 benefits. Instead, Harmony House offered Plaintiff a lowered rent, based on her status and its policies as an independent non-profit organization. Plaintiff's rent was eventually set at $400 a month. *Id.*, Dkt. 19, Declaration of Nickolas Bohl, ¶ 2.

In 2013, Plaintiff sued Harmony House in state court for a variety of claims related to its management of the Project. The court dismissed the case on summary judgment. *See*, *Nason v.*

---

[1] The fact that Plaintiff's first name is also Harmony is coincidental.

REPORT AND RECOMMENDATION - 2

*Hoban & Assocs., Inc.*, 199 Wash. App. 1022 (2017) (affirming dismissal). In 2017, a state court granted Plaintiff's request for a restraining order against a housemate. Dkt. 5-2, p. 40. After this legal action, Harmony House had trouble continuing operations and providing HUD-required services at the Project. Dkt. 20, Escalante Decl., ¶ 7. The Project's marginal revenue and low unit count was not enough to provide the funding Harmony House needed to maintain the level of required services at the Project. *Id.*

In September 2017, Harmony House decided to dissolve due to lost rental revenue, increased operating costs, and increased costs due to Plaintiff's litigation. Dkt. 5-2, p. 31 ("We have also had 2 property managers terminate contracts with us over the past 8 years because of the behavior of a resident at the Powell house. This same resident refuses mediation but continues to make demands for reasonable accommodation that has prevented us from inspecting the unit she occupies for over 3 years."); Dkt. 20, Escalante Decl., ¶¶ 8-9. HUD unsuccessfully attempted to find new management or a new owner for the Project. *Id.*, ¶ 10. Harmony House's dissolution triggered a default and accelerated the mortgage. *Id.*, ¶ 11.

In March 2019, HUD became mortgagee-in-possession. Dkt. 20, Escalante Decl., ¶ 12. Shortly thereafter, HUD offered a voluntary relocation program for all residents, which included rental assistance through Tenant Protection Vouchers, financial assistance to move, counseling, and other assistance. *Id.*; Dkt. 5-3, Declaration of Harmony Nason, pp. 3-5. HUD repeatedly extended the offer for relocation services to Plaintiff, extended the time by which she had to reply, and explained that the relocation services would not always be available to her. Dkt. 20, Escalante Decl., ¶ 13; Dkt. 5-2, p. 50. Plaintiff declined HUD's attempts to offer another housing opportunity. Plaintiff was the only Project tenant to refuse the relocation services. Dkt. 20, Escalante Decl., ¶ 12.

REPORT AND RECOMMENDATION - 3

In November 2020, HUD notified Plaintiff in writing, that it intended to foreclose on the property. Dkt. 5-3, Nason Decl., p. 11; Dkt. 5-2, p. 56. Although she objected and threatened to file a lawsuit to prevent the foreclosure, Plaintiff did not file anything, and HUD held a non-judicial foreclosure in October 2021. Dkt. 5-3, Nason Decl., p. 12; Dkt. 5-2, pp. 63-65. At that time, Plaintiff owed HUD over $2,400.00 in back rent. Dkt. 19, Bohl Decl., ¶ 4.

HUD sold the three properties to Safe IRA Properties LLC ("Safe") in December 2021. Dkt. 5-3, Nason Decl., pp. 15-16; Dkt. 12, pp. 1, 10. The sale of the Powell Street property included a Foreclosure Use Sale Agreement ("Use Agreement") and three riders. The Use Agreement (Dkt. 12, pp. 15-16) is required by federal regulations whenever HUD and a foreclosure buyer agree to terms. 24 C.F.R. § 27.20(d). The first rider (Dkt. 12, p. 17) is required by the Protecting Tenants at Foreclosure Act ("PTFA"). 12 U.S.C. § 5220 note. The second rider ("Two-year Rent Protection for Pre-Existing Very Low-Income Tenants," Dkt. 12, p. 18) HUD included in its discretion, which it often does in foreclosures. Dkt. 20, Escalante Decl., ¶ 17. And the third rider ("Rider of Enforcement," Dkt. 12, p. 19) is HUD's enforcement mechanism in addition to paragraph 10 of the Use Agreement ("Remedies for Non-compliance"). The first rider provided that Safe had to give any tenant 90 days' notice prior to eviction. The second rider stated that Safe had to assess the income level of its residents and if they were very low income, it could not raise the rent for two years. The third rider allowed HUD to enforce all conditions agreed to between HUD and Safe.

Shortly after closing, the new owner, Safe, sent Plaintiff a notice of termination of tenancy and notice to vacate by April 30, 2022, giving her over 90 days as required by the rider and statute. Dkt. 5-3, Nason Decl., p. 16; Dkt. 5-2, p. 78. Safe never assessed Plaintiff's income level, but never charged her rent during this time. Dkt. 20, Escalante Decl., ¶ 19; Dkt. 19, Bohl

REPORT AND RECOMMENDATION - 4

1  Decl., ¶ 3.

2  On August 2, 2022, a Snohomish County Judge ordered Plaintiff's eviction. Dkt. 12, p. 3.
3  According to AUSA Bohl, the Snohomish County Sheriff's Office served Plaintiff with an
4  eviction notice dated August 15, 2022, but there is no date set for a lock-out and Plaintiff was not
5  evicted on that date. Dkt. 19, Bohl Decl., ¶ 2.

6  On August 5, 2020, Plaintiff filed her motions for emergency relief in this case and
7  served the U.S. Attorney's Office by mail on August 11, 2022. The Court entered a briefing
8  schedule that same day. Dkt. 17.

## STANDARD OF REVIEW

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Obtaining either a temporary restraining order or preliminary injunction "requires" the movant to "demonstrate (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in his favor, and (4) that an injunction is in the public interest." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009); *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977) (standards for TRO and PI are the same). "When the government is a party, the third and fourth" factors merge. *East Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 984 (9th Cir. 2020).

The first factor "is a threshold inquiry." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). "[W]hen a plaintiff has failed to show the likelihood of success on the merits," the Court "need not consider the remaining three" requirements. *Id*.

1       Here, Plaintiff has failed to show a likelihood of success on the merits as this Court lacks
2  subject matter jurisdiction, Plaintiff lacks standing to sue the Federal Defendants, and Plaintiff
3  has failed to state a viable claim against the Federal Defendants.

4                                          DISCUSSION

5       Plaintiff requests that the Court issue a temporary restraining order and preliminary
6  injunction "requiring Safe IRA Properties, LLC ("Safe") to cease and desist all evictions efforts
7  and abide by the Agreement they entered into with HUD …". Dkt. 12, p. 1. As previously noted,
8  Safe is not a party to this action.[2] As to her allegations against HUD, who is a named party,
9  Plaintiff alleges that HUD failed to comply with its regulations to provide her with an Enhanced
10 Voucher; failed to perform yearly rent recertification since 2019; failed to force Safe to comply
11 with the Agreement and provide her with an updated lease; improperly applied a rental assistance
12 grant obtained by Plaintiff from Volunteers of America to rent already paid; and violated its
13 regulations when it sold the Powell Street Property to a for-profit owner. Dkt. 12, p. 4.

14 A.     Subject Matter Jurisdiction

15      "Absent a waiver, sovereign immunity shields the Federal Government and its agencies
16 from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Plaintiff does not assert any claim for
17 injunctive relief for which there is subject-matter jurisdiction.

18      Plaintiff asks the Court to stop her eviction in part, because "HUD and Safe … are
19 attempting to illegally evict her." Dkt. 12, p. 5. However, HUD is no longer the mortgagee-in-
20 possession and Plaintiff's eviction proceedings, brought by Safe, are ongoing in the Superior
21 Court of Snohomish County, Cause No. 22-2-03859-31. Dkt. 12, p. 3.

---

[2] In her reply memorandum, Plaintiff has added Safe to the caption as an "interested party." Dkt. 21-1 at 1. However, this is not procedurally proper as Plaintiff has neither sought nor obtained leave to amend her complaint.

REPORT AND RECOMMENDATION - 6

Plaintiff also asserts an Administrative Procedures Act ("APA") claim in her complaint. However, those allegations relate to HUD's oversight of the Project in 2019 (*see* Dkt. 5), and therefore, cannot be grounds for threatening irreparable harm today. Plaintiff does not identify a final agency action or explain why any action by HUD was arbitrary and capricious as related to her current eviction proceedings. Moreover, the APA does not waive sovereign immunity to enforce contractual rights between a federal agency and another party. *N. Star Alaska v. United States*, 14 F.3d 36, 38 (9th Cir. 1994) ("We hold that the APA does not waive sovereign immunity for North Star's contractually based claim for equitable relief."). Instead, the APA waives sovereign immunity for district court actions for equitable relief "resting at bottom on statutory rights." *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 922 F. Supp. 273, 281 (D. Ariz. 1996), aff'd, 136 F.3d 641 (9th Cir. 1998).

In her emergency motion, Plaintiff is essentially asking the Court to enforce contractual clauses between HUD and Safe. *See* Dkt. 12 at 4 ("HUD failed to enforce the new owner to comply with the Agreement"; HUD failed when going against the contract and regulations on selling …to a for profit owner.") These are not statutory rights. Plaintiff's allegations deal solely with the contractual relationship between HUD and Safe, a contractual relationship to which Plaintiff is not a party. Plaintiff has not alleged or shown privity of contract or that she is a third-party beneficiary. The government represents that it has searched and is not aware of any case finding privity or third-party beneficiary status from a housing tenant enforcing a contract between HUD and a private purchaser and cites to *Cienega Gardens v. United States*, 194 F.3d 1231, 1244–45 (Fed. Cir. 1998). In that case, the Federal Circuit Court of Appeals found that a party cannot demonstrate privity of contract with HUD merely because HUD is extensively involved in a housing project's operations by virtue of a regulatory agreement with the project

REPORT AND RECOMMENDATION - 7

owner. Similarly, in this case, Plaintiff and HUD are not in privity merely because HUD previously acted as mortgagee-in-possession of the property. Additionally, the only benefits to Plaintiff from this contractual relationship, are eviction notice requirements and rent protection – both of which Plaintiff received. *See J.W. Bowman Co. v. United States*, 2001 WL 936316, at *7 (S.D. Cal. Jan. 2, 2001) ("The rights of a third-party beneficiary are limited by the contract between the promisor and the promisee.") The fact that Plaintiff seeks equitable relief also does not confer jurisdiction under the APA for a breach of contract claims. *See*, *e.g.*, *Teitelbaum v. HUD*, 953 F. Supp. 326, 329-30 (D. Nev. 1996) (holding that the APA does not confer jurisdiction, even for equitable relief) ("Plaintiffs' Complaint is couched in terms of breach of contract. Plaintiffs essentially seek reformation, injunction, and a declaration that the parties entered into a binding agreement that of which HUD has breached.").

Finally, to the extent Plaintiff is alleging that HUD violated the terms of the first rider, which was required by the PTFA, § 702(a), it is unclear how this would affect Plaintiff's eviction. Moreover, the PTFA does not provide a private right of action. *Logan v. U.S. Bank Nat. Ass'n*, 722 F.3d 1163, 1169 (9th Cir. 2013).

B.    Standing

Safe, the evicting entity, is not a party to this lawsuit. Plaintiff asks the Court to issue "a temporary restraining order (TRO) and preliminary injunction requiring [Safe] to cease and desist all eviction efforts and abide by the Agreement they entered with HUD…until the conclusion of this lawsuit." Dkt. 12 at 1.

As previously noted, Plaintiff's eviction proceedings are occurring before Superior Court Judge Ellis, where Plaintiff is represented by counsel. Dkt. 12 at 3. Plaintiff provides no authority, and this Court is not aware of any, that would allow this Court to overrule or intervene

REPORT AND RECOMMENDATION - 8

in a state superior court eviction proceeding. A plaintiff must ask for relief against a party who can redress her claim. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992) ("Standing is particularly difficult to show here, since third parties, rather than respondents, are the object of the Government action or inaction to which respondents object."). HUD cannot stop Plaintiff's eviction and her relief depends on the actions of a private party not named in this lawsuit. *See*, *Lujan*, 504 U.S. at 562 ("When, however, as in this case, a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, much more is needed. In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction—and perhaps on the response of others as well.")

Plaintiff lacks standing because she cannot show either causation or redressability by HUD. In *Wilson v. Seattle Hous. Auth.*, this Court held that the plaintiff had no standing to sue HUD, where HUD and the Seattle Housing Authority were independent parties in contract. Because the Seattle Housing Authority was the one promulgating policies and HUD merely provided the regulatory scheme, the Court found that plaintiffs' injuries were not fairly traceable to HUD. *Wilson,* No. 09-cv-00226-MJP, 2011 WL 1213168, at *2 (W.D. Wash. Mar. 29, 2011); *see also Rodden v. Fauci*, 571 F. Supp. 3d 686, 691 (S.D. Tex. 2021) ("[T]he injury is not redressable if it results from the independent action of some third party not before the court."); *de Cristo Cano v. Biden*, 2022 WL 1004558, at *2 (S.D. Cal. Apr. 4, 2022) (dismissing a TRO application because plaintiffs sought for reinstatement of employment, but "plaintiffs' employers are not named as defendants…failure to name the proper defendants precludes the Court from providing relief that will redress their injuries and therefore deprives it of jurisdiction over their claims as well.").

REPORT AND RECOMMENDATION - 9

As correctly noted by the Federal Defendants, Plaintiff's injury is not traceable to HUD because HUD has no power over Safe to stop the eviction. At best, if HUD had some contractual obligation to do so, it could file a lawsuit against Safe. However, any such lawsuit would be to enforce the contractual provisions between HUD and Safe and would not undo the entire transaction. *See Isaacson v. HUD*, No. 17-cv-1449-RSL, 2018 WL 3093328, at *3 (W.D. Wash. June 22, 2018) ("Plaintiff has not satisfied this burden because even were the Court to void the HUD rule in question, plaintiff fails to allege how that would lead a qualified lender to choose to grant her a reverse mortgage. Plaintiff does not identify how a favorable ruling would be likely to redress her hypothetical mortgage-related injury.").

Because Plaintiff has no opportunity for redress here against HUD (and her opportunity for redress is in the state eviction court), the undersigned concludes that this Court has no jurisdiction over her claims for equitable relief and the motion for temporary restraining order and preliminary injunction (Dkt. 12) should be denied.

C.    <u>Likelihood of Success on the Merits</u>

In the event the Court believes it has jurisdiction over Plaintiff's claims for equitable relief, the undersigned concludes that Plaintiff has failed to show a likelihood of success on the merits of her claims. Plaintiff seeks (1) a temporary restraining order halting all eviction efforts and (2) to force HUD to provide an "Enhanced Voucher." Dkt. 12, at 5-6.

1.    <u>Eviction Efforts</u>

Plaintiff suggests that an agreement exists between Safe and HUD to protect her from eviction for two years. Dkt. 12, pp. 1-3. However, there is no two-year protection against eviction. At most, there is a protection against rent increases and Plaintiff has not alleged that Safe increased her rent after the foreclosure. Dkt. 20, Escalante Decl., ¶¶ 19-20.

REPORT AND RECOMMENDATION - 10

Plaintiff repeatedly states that the foreclosure was illegal but fails to show why or how this can provide her the relief she seeks. Because Plaintiff cites to several of the agreements between HUD and Safe, the Court addresses them below.

    a.    The Use Agreement (Dkt. 12, at pp. 15-16) provides that the purchaser cannot convey the property for two years without prior written approval. *Id*. at ¶ 2. Plaintiff does not allege any conveyance of the Powell Street house and the government is not aware of any. The Use Agreement also provides that the rental housing conditions must be maintained per regulations. Id. at ¶ 3. Plaintiff makes no allegation of any specific violation other than to state that Safe has not done any landscaping for 8 months. Dkt. 12 at 4. She cites a regulation that provides the following: "Building exterior. Each building on the site must be structurally sound, secure, habitable, and in good repair. Each building's doors, fire escapes, foundations, lighting, roofs, walls, and windows, where applicable, must be free of health and safety hazards, operable, and in good repair." 24 C.F.R. § 5.703(c).

Plaintiff fails to explain how a general failure to provide landscaping violates the regulations and even if it did, Plaintiff has no private right of action to enforce it as was previously noted. The evidence also reflects that Plaintiff has prevented any inspections of or access to the Powell Street property since at least 2017. Dkt. No. 5-2, p. 31; Escalante Decl., ¶ 15); *see also Akeem v. Dasmen Residential, LLC*, 2021 WL 3509644, at *4 (E.D. La. Aug. 10, 2021) (holding that "Plaintiffs do not have a private right of action under § 5.703" and that plaintiffs could not enforce a contractual right between HUD and a third party); *Mercer v. New York City Hous. Auth.*, 2022 WL 94866, at *2 (S.D.N.Y. Jan. 8, 2022). There are insufficient facts alleged to state a claim that this use agreement was violated by Safe or HUD, much less to support the extraordinary relief requested by Plaintiff.

REPORT AND RECOMMENDATION - 11

b. <u>Rider 1 (Dkt. No 12, at p. 17)</u> provides that a tenant retains all rights as a tenant as of the date of the notice of foreclosure. In addition, the rider provides extra notice requirements for eviction proceedings. Because Plaintiff is a month-to-month lessee, paragraph 2(b) of Rider 1 applies to her. Dkt. 20, Escalante Decl., ¶ 18. This states that "such tenant [*i.e.*, a month-to-month lessee] may be required by a purchaser at foreclosure to vacate the unit provided that the tenant is given 90 calendar days prior notice by the purchaser at foreclosure." Dkt. 12, p. 17. Safe provided more than 90 days of notice. On January 24, 2022, Safe sent Plaintiff a notice to vacate by April 30, 2022. Dkt. 5-2, p. 78. Plaintiff has still not vacated almost seven months later. In short, Plaintiff has failed to allege facts showing that HUD violated this Rider or that such violation provides a basis for the equitable relief she seeks here.

c. <u>Rider 2 (Dkt. 12, at 18)</u> provides for two-year rent protection for pre-existing very low-income tenants. It required Safe to provide notice to Plaintiff that she may qualify for such protection, then conduct an initial income certification within 30 days to determine if she did indeed qualify. *Id*. at ¶¶ 1-3. If Plaintiff qualified, Safe could not increase her rent for two years. Plaintiff alleges that Safe did not provide her with notice or conduct the certification. Dkt. 12 at 4-5; Dkt. 13, p. 2. Even if these allegations are true, Plaintiff does not allege that Safe increased her rent and it is the government's understanding that Plaintiff has not paid rent to Safe since January 2022. Dkt. 20, Escalante Decl., ¶ 19; Dkt. 19, Bohl Decl., ¶ 4. Moreover, this is an issue between Plaintiff and Safe and does not provide a basis for the equitable relief sought here by Plaintiff against HUD.

d. <u>Rider 3 (Dkt. 12, p. 19)</u> provides for HUD's enforcement of the rider. Paragraph 3 pertains to Section 8 assistance. However, as the evidence reflects, there are no

REPORT AND RECOMMENDATION - 12

1   Section 8 benefits at issue in this case and this paragraph does not apply. Plaintiff does not allege
2   that either HUD or Safe violated Rider 3.

3       e.  <u>Other Regulations</u>.  Plaintiff alleges HUD violated other regulations that
4   are separate and apart from the contract, including: (1) that HUD failed to do Plaintiff's yearly
5   rent recertification; (2) that HUD applied Plaintiff's Volunteers of America voucher to past rent
6   she owed HUD, rather than forwarding it to the new owner; and (3) that HUD improperly sold
7   the property to a for-profit owner. Dkt. 12, p. 4. Even assuming these facts are true, Plaintiff fails
8   to identify any factual or legal authority or explanation of how these actions are relevant to the
9   eviction proceedings or the equitable relief she seeks in this motion.

10    In her brief attached to the proposed order, Plaintiff cites RCW 7.40.020 and discusses
11  HUD's management of the property and the foreclosure. Dkt. 13-1, at 3-4. It is unclear why
12  Plaintiff relies on the state statute instead of this Court's federal injunction standards.
13  Additionally, the statute cited requires Plaintiff to show that a defendant "is doing, or threatened,
14  or is about to do" some action that would violate the plaintiff's rights or property. *Id*. Plaintiff
15  has not shown that HUD is doing or has threatened to do anything and Safe is acting pursuant to
16  an eviction order from a state court.

17    Plaintiff also quotes from a brochure related to Section 8 housing rights, but as previously
18  noted, the Project was never Section 8 housing, and the Project did not receive Section 8
19  assistance. These issues are immaterial to the emergency relief Plaintiff seeks here.

20    Throughout her pleadings, Plaintiff states it was illegal for HUD to sell the project and
21  that the foreclosure was illegal. *See*, *e.g*., Dkt. 13-1, p. 4. However, these statements are not
22  supported by facts or law. According to the Federal Defendants, the foreclosure is governed by
23  the Multifamily Mortgage Foreclosure Act, 12 U.S.C. § 3701 *et seq*. Section 3706(b)(2) provides

that HUD is not required to continue its programs at a foreclosed property if, at the time of foreclosure, the majority of the units are occupied. At the time of foreclosure, Plaintiff was the only tenant in the Project. Therefore, HUD had no obligation to require a purchaser at foreclosure to continue providing services. HUD was also required to give 60 days' notice. 24 C.F.R. § 290(b). Plaintiff admits she received almost an entire year's notice and knew of the foreclosure since at least November 2020. Dkt. 5-3, Nason Decl., p. 11; Dkt. 5-2, p. 56 ("HUD November 10, 2020 Foreclosure notice"). HUD did not initiate the foreclosure until October 2021 and tried, to no avail, during that 11-month interval to find an amicable relocation solution for Plaintiff. *See* Dkt. 20, Escalante Decl.

There are no set of alleged facts on which to find the foreclosure was improper or illegal. Even if the foreclosure were defective, there is no remedy for the Court to provide. The foreclosure is final, the sale has closed, and there is no authority for unwinding it. Although Plaintiff prepared a complaint and TRO to stop the foreclosure—and HUD was ready to halt it based on her threatened filing—but she never actually filed anything and attended the auction instead. Dkt. 5-3, Nason Decl., pp. 12-15; Dkt. 5-2, pp. 63-67.

   2. <u>Enhanced Voucher</u>

Plaintiff alleges that HUD is required to give her an Enhanced Voucher, per its policy. Dkt. 12, p. 4. She does not cite to any policy, regulation, or statute that requires such an action. Rather, an enhanced voucher is available only if any of the statutorily enumerated "eligibility events" occur, such as the termination of a Section 8 contract for rental assistance. 42 U.S.C. § 1437f(t)(2). Plaintiff does not allege that any such events occurred here, and they did not, as the Project did not have a Section 8 contract for rental assistance; it had a Project Rental Assistance Contract under 42 U.S.C. § 8013(b)(3). Dkt. 20, Escalante Decl., ¶ 5.

REPORT AND RECOMMENDATION - 14

More importantly, the record reflects that Plaintiff can still apply for standard vouchers. The record reflects that HUD has repeatedly told Plaintiff she could apply for tenant protection vouchers (TPV), which can be used to subsidize someone's rent, based on their income level. Enhanced vouchers are a subset of TPVs, which provide additional protections, but are only available to tenants in Section 8 project-based housing. When HUD became the mortgagee-in-possession of the Project, it triggered HUD's ability to offer the residents voluntary relocation services, which included TPVs (but not Enhanced Vouchers). Dkt. 20, Escalante Decl., ¶ 12. HUD informed Plaintiff in August 2019 that this voluntary relocation package, which included additional benefits in addition to vouchers, was available only for 60 days. Dkt. 5-3, Nason Decl., pp. 9-10; Dkt. 5-2, pp. 18-20. She declined, but nevertheless remains eligible for a TPV through the Snohomish County Housing Authority (HASCO), which dispenses HUD funds, so long as Plaintiff applies and her income qualifies, which the government believes is very likely. HUD, both on its own and through undersigned counsel, has repeatedly offered to help Plaintiff start that process. Dkt. 19, Bohl Decl., ¶ 5. Plaintiff fails to show that she is likely to succeed on her claim that she is entitled to Enhanced Vouchers.

D. <u>Irreparable Harm</u>

The threat of eviction represents significant harm. However, it is not enough to state the possibility of harm. Rather, Plaintiff must be able to causally connect her requested relief and the irreparable injury. "To establish redressability, a plaintiff must show that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018). Plaintiff has not done so. She has sued the wrong party in the wrong court. Plaintiff's remedy, if any, is in the ongoing state court eviction proceedings initiated by Safe, the current owner of the property.

REPORT AND RECOMMENDATION - 15

E.      Balance of Equities and Public Interest

The balance of equities and public interest also favor denying injunctive relief. While the threat of eviction weighs heavily on the scales, undoing a final sale of real property between HUD and a third-party could create significant chaos for HUD, which handles many similar sales every year. According to the Federal Defendants, this foreclosure sold three separate properties via three separate deeds and Safe has already sold the other properties. Dkt. 18, p. 16. Thus, an unwinding of the foreclosure sale could dramatically upend the status quo and require extraordinary relief not contemplated by a temporary restraining. Such an action could also discourage perspective HUD-authorized sales if it was known that a foreclosure sale could be set aside based on the type of unsupported allegations presented here.

## CONCLUSION

The Harmony House Project has been nonoperational since 2018 and Plaintiff admits that she was aware of HUD's efforts to sell the property for years. During that time, Plaintiff has resided in the Powell Property by herself rent-free and still has the opportunity for government assistance in finding a new place to live.

Plaintiff faces eviction pursuant to a Snohomish County Superior Court order but the owner of the property where Plaintiff resides is owned by a private party, who has not been named in this action. Because HUD is not involved in the eviction, there is no remedy the Court can order against HUD that would prevent Plaintiff's eviction. Plaintiff's remedies, if any, are available through her state court action and against the private-party owner.

Plaintiff has not presented a viable claim for equitable relief over which this Court has subject-matter jurisdiction because the government has not waived sovereign immunity over her claims and because there is no possibility of redress by HUD. Even assuming jurisdiction,

Plaintiff has almost no likelihood of success because she fails to state a viable claim.

Based on the foregoing, the undersigned recommends that the Emergency Motion for Temporary Injunction and Preliminary Injunction (Dkt. 12) be denied.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **September 16, 2022**. The Clerk should note the matter for **September 19, 2022**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed twelve (12) pages. The failure to timely object may affect the right to appeal.

DATED this 31st day of August, 2022.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 17