UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HARMONY NASON,

                Plaintiff,

   v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, MARCIA FUDGE, in her official capacity as Secretary of U.S. Department of Housing and Urban Development;

                Defendants.

CASE NO. 2:22-cv-00887-RAJ

**REPORT AND RECOMMENDATION**

    The United States Department of Housing and Urban Development ("HUD") and Marcia Fudge, in her official capacity as Secretary of HUD, (collectively "Federal Defendants"), move to dismiss the complaint of Plaintiff Harmony Nason for lack of subject matter jurisdiction and failure to state a claim. Dkt. 24. The motion was originally noted for September 30, 2022, but was extended for several months, until January 9, 2023 to provide Plaintiff ample opportunity to respond to the motion. Dkt. 33.

    Having considered the parties' submissions and balance of the record, the undersigned recommends the motion be granted as the Court lacks subject matter jurisdiction over Plaintiff's claims.

REPORT AND RECOMMENDATION - 1

BACKGROUND

In May 1992, HUD financed the acquisition of three single-family homes throughout Snohomish County by Harmony House East Association,[1] a non-profit organization ("Harmony House") ("the Project"). The financing included an initial grant and continuing rental subsidy for the Project to operate. The financing also involved a mortgage held by HUD and a Regulatory Agreement. Dkt. 20, Declaration of Adela Escalante, Branch Chief for HUD, Office of Multifamily Housing, Property Disposition Division ("PD"). PD is responsible for managing and disposing of multifamily housing projects, through foreclosure sale, that are subject to a mortgage held by HUD. *Id.*

The Project provided housing and supportive services to low-income, chronically mentally ill tenants. The Project had 12 units scattered throughout the single-family homes located at 514 Powell Street, 16018 Dennis Way, and 12925 182nd Ave SE. Each address provided a group-home living for 4 tenants. Plaintiff moved into the Powell Street property around 2007. Dkt. 1; Dkt. 20, Escalante Decl., ¶¶ 5-6. Plaintiff did not receive HUD Section 8 assistance or any Section 8 benefits. Instead, Harmony House offered Plaintiff a lowered rent, based on her status and its policies as an independent non-profit organization. Plaintiff's rent was eventually set at $400 a month. *Id.*, Dkt. 19, Declaration of Nickolas Bohl, ¶ 2.

In 2013, Plaintiff sued Harmony House in state court for a variety of claims related to its management of the Project. The court dismissed the case on summary judgment. *See*, *Nason v. Hoban & Assocs., Inc.*, 199 Wash. App. 1022 (2017) (affirming dismissal). In 2017, a state court granted Plaintiff's request for a restraining order against a housemate. Dkt. 5-2, p. 40. After this legal action, Harmony House had trouble continuing operations and providing HUD-required

---

[1] The fact that Plaintiff's first name is also Harmony is coincidental.

services at the Project. Dkt. 20, Escalante Decl., ¶ 7. The Project's marginal revenue and low unit count was not enough to provide the funding Harmony House needed to maintain the level of required services at the Project. *Id.*

In September 2017, Harmony House decided to dissolve due to lost rental revenue, increased operating costs, and increased costs due to Plaintiff's litigation. Dkt. 5-2, p. 31 ("We have also had 2 property managers terminate contracts with us over the past 8 years because of the behavior of a resident at the Powell house. This same resident refuses mediation but continues to make demands for reasonable accommodation that has prevented us from inspecting the unit she occupies for over 3 years."); Dkt. 20, Escalante Decl., ¶¶ 8-9. HUD unsuccessfully attempted to find new management or a new owner for the Project. *Id.*, ¶ 10. Harmony House's dissolution triggered a default and accelerated the mortgage. *Id.*, ¶ 11.

In March 2019, HUD became mortgagee-in-possession. Dkt. 20, Escalante Decl., ¶ 12. Shortly thereafter, HUD offered a voluntary relocation program for all residents, which included rental assistance through Tenant Protection Vouchers, financial assistance to move, counseling, and other assistance. *Id.*; Dkt. 5-3, Declaration of Harmony Nason, pp. 3-5. HUD repeatedly extended the offer for relocation services to Plaintiff, extended the time by which she had to reply, and explained that the relocation services would not always be available to her. Dkt. 20, Escalante Decl., ¶ 13; Dkt. 5-2, p. 50. Plaintiff declined HUD's attempts to offer another housing opportunity. Plaintiff was the only Project tenant to refuse the relocation services. Dkt. 20, Escalante Decl., ¶ 12.

In November 2020, HUD notified Plaintiff in writing, that it intended to foreclose on the property. Dkt. 5-3, Nason Decl., p. 11; Dkt. 5-2, p. 56. Although she objected and threatened to file a lawsuit to prevent the foreclosure, Plaintiff did not file anything, and HUD held a non-

REPORT AND RECOMMENDATION - 3

judicial foreclosure in October 2021. Dkt. 5-3, Nason Decl., p. 12; Dkt. 5-2, pp. 63-65. At that time, Plaintiff owed HUD over $2,400.00 in back rent. Dkt. 19, Bohl Decl., ¶ 4.

HUD sold the three properties to Safe IRA Properties LLC ("Safe") in December 2021. Dkt. 5-3, Nason Decl., pp. 15-16; Dkt. 12, pp. 1, 10. The sale of the Powell Street property included a Foreclosure Use Sale Agreement ("Use Agreement") and three riders. The Use Agreement (Dkt. 12, pp. 15-16) is required by federal regulations whenever HUD and a foreclosure buyer agree to terms. 24 C.F.R. § 27.20(d). The first rider (Dkt. 12, p. 17) is required by the Protecting Tenants at Foreclosure Act ("PTFA"). 12 U.S.C. § 5220 note. The second rider ("Two-year Rent Protection for Pre-Existing Very Low-Income Tenants," Dkt. 12, p. 18) HUD included in its discretion, which it often does in foreclosures. Dkt. 20, Escalante Decl., ¶ 17. And the third rider ("Rider of Enforcement," Dkt. 12, p. 19) is HUD's enforcement mechanism in addition to paragraph 10 of the Use Agreement ("Remedies for Non-compliance"). The first rider provided that Safe had to give any tenant 90 days' notice prior to eviction. The second rider stated that Safe had to assess the income level of its residents and if they were very low income, it could not raise the rent for two years. The third rider allowed HUD to enforce all conditions agreed to between HUD and Safe.

Shortly after closing, the new owner, Safe, sent Plaintiff a notice of termination of tenancy and notice to vacate by April 30, 2022, giving her over 90 days as required by the rider and statute. Dkt. 5-3, Nason Decl., p. 16; Dkt. 5-2, p. 78. Safe never assessed Plaintiff's income level, but never charged her rent during this time. Dkt. 20, Escalante Decl., ¶ 19; Dkt. 19, Bohl Decl., ¶ 3.

On August 2, 2022, a Snohomish County Judge ordered Plaintiff's eviction. Dkt. 12, p. 3. According to AUSA Bohl, the Snohomish County Sheriff's Office served Plaintiff with an

REPORT AND RECOMMENDATION - 4

1  eviction notice dated August 15, 2022. Dkt. 19, Bohl Decl., ¶ 2. Plaintiff confirms she was a

2  defendant in an eviction case brought by Safe in Cause No. 22-2-03859-31 in Snohomish County

3  Superior Court and that she was evicted pursuant to that proceeding and is now homeless. Dkt.

4  41, Declaration of Harmony Nason, pp. 3-4.

5        On June 27, 2022, Plaintiff filed her Complaint against HUD. Dkt. 5. On August 5, 2020,

6  Plaintiff filed an emergency motion for equitable relief. Dkt. 12. The Federal Defendants

7  opposed the motion. Dkt. 18. The Court denied Plaintiff's motion after finding Plaintiff lacks

8  standing and her claims are unlikely to succeed. Dkt. 23 (R&R); Dkt. 35 (Order Adopting).

9  <center>PLAINTIFF'S ALLEGATIONS</center>

10        The Project was run illegally for many years and the foreclosure sale of Harmony House

11  was illegal. Dkt. 5 (Complaint), p. 3. HUD failed to monitor the requirement that a partner

12  organization be secured to provide supportive services and allowed it to dissolve without

13  providing tenants with a 12-month notice. *Id.*, p. 4. HUD "illegally obstructed" her FOIA

14  requests to determine what HUD did to ensure the program succeeded. HUD also failed in its

15  oversight of Harmony House contrary to HUD regulations. *Id.*

16        In June 2019, Plaintiff received a HUD notice of foreclosure, relocation information, and

17  another eviction threat notice. *Id.*, p. 5. In July 2019, HUD officials informed Plaintiff that she

18  had two months to decide whether to voluntarily leave Harmony House and accept Housing

19  Choice Vouchers. *Id.*

20        Plaintiff asserts claims of breach of contract, violation of the Administrative Procedures

21  Act ("APA"), various torts, and violation of Washington State Law Against Discrimination and

22  of 42 U.S.C. § 8013.

23

REPORT AND RECOMMENDATION - 5

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Because "[f]ederal courts are courts of limited jurisdiction[,]" "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). Thus, the plaintiff bears the burden of proof on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *Sopcak v. Northern Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995). If no subject matter jurisdiction exists, then the Court must dismiss the complaint. Fed. R. Civ. P. 12(h)(3).

Challenges to jurisdiction may be either facial or factual in nature. *San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of the Interior*, 905 F. Supp. 2d 1158, 1167 (E.D. Cal. 2012). A facial attack to jurisdiction "accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). A factual attack, on the other hand, "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id*. In a factual challenge, the court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

## DISCUSSION

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Plaintiff does not assert any claims for which this Court has jurisdiction.

REPORT AND RECOMMENDATION - 6

A.  <u>Breach of Contract</u>

Plaintiff's breach of contract allegations center on the Foreclosure Use Sale Agreement between HUD and Safe relating to the foreclosure of the Project. For example, Plaintiff alleges she has a right to enforce the agreement, Safe was obligated to protect the tenants and provide two-year rent protection after it purchased the Project, and Safe has violated several of its alleged obligations under the Foreclosure Use Sale Agreement. Dkt. 5. However, Safe is not a party to this action.

Moreover, contractual claims for money damages against the United States must be brought pursuant to the Tucker Act or the Little Tucker Act. 28 U.S.C. §§ 1346 (Little Tucker Act), 1491 (Tucker Act). Federal district courts have jurisdiction over contract claims against the United States, but only for claims "not sounding in tort" and "not exceeding $10,000 in amount." 28 U.S.C. § 1346(a)(2).

The Court of Federal Claims has exclusive jurisdiction over Tucker Act claims for more than $10,000 "to the extent that Congress has not granted any other court authority to hear the claims that may be decided by the Claims Court." *Bowen v. Massachusetts*, 487 U.S. 879, 910 n.4 (1988). "[T]he Tucker Act and Little Tucker Act create a presumption of exclusive jurisdiction in the Court of Federal Claims, but that presumption can be overcome by an independent statutory grant of jurisdiction to another court." *Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1137 (9th Cir. 2013) The Little Tucker Act is a jurisdictional statute. *Bergstrom v. United States Navy*, No. 21-cv-055-MJP, 2022 WL 36720, at *2 (W.D. Wash. Jan. 3, 2022).

Thus, Plaintiff must provide an independent cause of action for her claim. *Id*. ("The Act provides jurisdiction for 'any civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any

REPORT AND RECOMMENDATION - 7

1   regulation of an executive department....") (quoting 28 U.S.C. § 1346(a)). Plaintiff suggests she
2   could limit her damages to 10,000 if it allows the Court to have jurisdiction for her contract
3   claim. Dkt. 41, ¶ 28. However, this does not eliminate the requirement that Plaintiff must state an
4   independent and cognizable breach of contract action. Plaintiff does not allege any federal statute
5   creating jurisdiction or waiving sovereign immunity for her contract claim.

6       Plaintiff's allegations deal solely with the contractual relationship between HUD and
7   Safe, a contractual relationship to which Plaintiff is not a party or third-party beneficiary. *See*
8   Dkt. 23, p. 7-8 (citing *Cienega Gardens v. United States*, 194 F.3d 1231, 1244–45 (Fed. Cir.
9   1998) (holding that a party cannot demonstrate privity of contract with HUD merely because
10  HUD is extensively involved in a housing project's operations by virtue of a regulatory
11  agreement with the project owner). In addition, Plaintiff lacks standing because she cannot show
12  either causation or redressability by HUD when the alleged injury results from the independent
13  action of some third party not before the court.

14      Equitable relief is also not available as "[t]he Act does not, however, authorize district
15  courts to grant declaratory or equitable relief against the United States. This is true even when
16  such relief is requested in an action brought pursuant to section 702 of the Administrative
17  Procedure Act." *Price v. GSA*, 894 F.2d 323, 324 (9th Cir. 1990) ("We can find no consent by
18  the United States to equitable relief of the kind plaintiff requests in this case. Although the
19  Tucker Act…authorizes the Claims Court to grant declaratory judgments and such equitable and
20  extraordinary relief as it deems proper in pre-award contract cases, it grants no such authority to
21  the district courts.").

22      Because Plaintiff has failed to identify any "basis for finding a waiver of sovereign
23  immunity," it is recommended the Court dismiss her breach of contract claim for lack of

REPORT AND RECOMMENDATION - 8

jurisdiction. *See Al-Haramain Islamic Found., Inc. v. Obama*, 705 F.3d 845, 848 (9th Cir. 2012) ("any waiver of sovereign immunity must be unequivocally expressed."); *Winterer v. Barr*, No. 20-cv-0557-JCC, 2020 WL 7767066, at *2 (W.D. Wash. Dec. 11, 2020) (dismissing pro se contract claim because plaintiff failed to identify any "basis for finding a waiver of sovereign immunity"); *Lexington Ins. Co. v. United States*, 465 F. Supp. 3d 1158, 1163–64 (W.D. Wash. 2020) (holding the Court had no subject-matter jurisdiction under similar pleading failures).

B.      Administrative Procedures Act ("APA") Claim

Plaintiff alleges HUD violated the APA by failing to provide relocation assistance, prevent displacement, monitor and review the Harmony House Project, and provide timely and proper notice of foreclosure. Dkt. 5, p. 6. However, Plaintiff has admitted she received almost a year's notice (well beyond the required 60 days proscribed in 24 C.F.R. § 290(b)) and knew of the foreclosure since at lease November 2020. Dkt. 5-3, Nason Decl., p. 11; Dkt. 5-2, p. 56 ("HUD November 10, 2020 Foreclosure notice"). HUD did not initiate the foreclosure until October 2021 and tried, to no avail, during that 11-month interval to find an amicable relocation solution for Plaintiff. *See* Dkt. 20, Escalante Decl.

To the extent Plaintiff seeks monetary damages under this claim, the Court has no jurisdiction as a plaintiff cannot seek monetary damages through an APA claim. *Harger v. Dep't of Lab.*, 569 F.3d 898 (9th Cir. 2009) (5 U.S.C. § 702). While the APA does waive sovereign immunity for equitable relief actions, those actions must rest on statutory rights. *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 922 F. Supp. 273, 281 (D. Ariz. 1996), aff'd, 136 F.3d 641 (9th Cir. 1998). Here, Plaintiff has alleged no statutory rights and it is unclear what injunctive relief this Court could afford when it is undisputed HUD sold the property and no longer controls it. *See* Dkt. 24, pp. 10-14. Moreover, the APA does not waive sovereign immunity to enforce

contractual rights between a federal agency and another party. *N. Star Alaska v. United States*, 14 F.3d 36, 38 (9th Cir. 1994).

Because Plaintiff has failed to establish subject-matter jurisdiction of her APA claim, the undersigned recommends this claim be dismissed.

C.   <u>Tort Claims – Emotional Distress, Fraud, Gross Negligence, Breach of Duty</u>

Plaintiff brings a variety of what appear to be tort claims, including for emotional distress, fraud, gross negligence, breach of duty. These claims must be dismissed because Plaintiff has failed to exhaust her administrative remedies.

As a limited waiver of the United States' sovereign immunity, actions brought under the Federal Tort Claims Act ("FTCA") must be pursued in compliance with the procedures set forth in that Act or not at all. 28 U.S.C. § 2675; *McNeil v. United States*, 508 U.S. 106, 112 (1993). A potential plaintiff must first participate in an administrative process with the relevant federal agency: An action shall not be instituted upon a claim against the United States for money damages…unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency…. 28 U.S.C. § 2675(a). Exhaustion of the administrative remedy constitutes a jurisdictional prerequisite to filing an action under the FTCA. "Because the requirement [of an administrative claim is jurisdictional], it must be strictly adhered to. This is particularly so since the FTCA waives sovereign immunity." *Brady v. United States*, 211 F.3d 499, 502 (9th Cir. 2000); *McNeil*, 508 U.S. at 113 ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.").

Plaintiff does not allege she presented any administrative claim to HUD and evidence submitted by HUD shows that she did not. Dkt. 25, Declaration of Derya Samadi, ¶ 3. Attached

REPORT AND RECOMMENDATION - 10

as an exhibit to Plaintiff's response, is a "Claim for Damage, Injury, or Death" dated October 18, 2022, which states that HUD has harmed Plaintiff and allowed others to do so. Dkt. 41, p. 11. However, this claim is not before the Court. While Plaintiff may pursue an FTCA action, she cannot pursue it in this Court before it is ripe and before she has exhausted the administrative process.

Because she failed to exhaust her administrative remedies in relation to any tort claims, the undersigned recommends that Plaintiff's tort claims be dismissed.

D.  Washington State Law Against Discrimination (RCW 39.60 *et seq*) (WLAD) and 42 U.S.C. § 8013

Plaintiff also alleges HUD violated Washington State Law Against Discrimination (RCW 49.60 et seq) (WLAD) and 42 U.S.C. § 8013. The United States has not waived sovereign immunity for WLAD claims. *Vega v. United States*, No. 11-cv-632-RSM, 2011 WL 6014853, at *9 (W.D. Wash. Dec. 2, 2011); *Candelaria v. United States*, No. 13-cv-5898 BHS, 2014 WL 4352111, at *3 (W.D. Wash. Sept. 2, 2014) ("The WLAD, however, does not confer jurisdiction on the Court.").

Plaintiff has also not alleged she has a private right of action under 42 U.S.C. § 8013. This statute concerns programs that provide supportive housing for persons with disabilities. A private right of action to enforce federal law must be created by Congress. *Alexander v. Sandoval*, 531 U.S. 1049 (2001). Section 8013 does not explicitly provide for one. To create a private right of action, "a statute must use rights-creating language." *UFCW Local 1500 Pension Fund v. Mayer*, 895 F.3d 695, 699 (9th Cir. 2018). Courts have repeatedly held there is no private cause of action under HUD's Section 8 program generally or a variety of other HUD programs. *See Harris v. Acts Syrene Apartments*, 2022 WL 767190, at *7 (N.D. Cal. Mar. 13, 2022) (holding there is no private right of action under HUD's Section 8 program); *Logan v. U.S.*

*Bank Nat. Ass'n*, 722 F.3d 1163, 1173 (9th Cir. 2013) (Protecting Tenants From Foreclosure Act does not create a private right of action); *Dewakuku v. Martinez*, 271 F.3d 1031, 1040 (Fed. Cir. 2001) (Indian Housing Act does not create a private right of action); *Weber v. GSA*, 2015 WL 8585820, at *4 (E.D. Wash. Dec. 10, 2015)(recognizing there is no subject-matter jurisdiction under WLAD to sue a federal agency). *See also, Norris v. Murfreesboro Leased Hous. Assocs.*, 2020 WL 6273916, at *7 (M.D. Tenn. Oct. 26, 2020) (HUD's Shelter Plus Care Program does not create a private right of action); *Akeem v. Dasmen Residential, LLC*, 2021 WL 3509644, at *4 (E.D. La. Aug. 10, 2021) (federal regulations regarding the conditions of low-income housing did not private a private right of action. *See also, Lil' Man in the Boat, Inc. v. City & Cty. of S.F.*, 5 F.4th 952, 958 (9th Cir. 2021) ("Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons.").

Because 42 U.S.C. § 8013 does not create a private right of action, the undersigned recommends this claim be dismissed.

## CONCLUSION

Plaintiff has not met her burden of showing this Court has subject matter jurisdiction over her claims. The undersigned recommends that HUD's motion to dismiss (Dkt. 24) be granted and Plaintiff's Complaint be dismissed with prejudice.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **February 13, 2023**. The Clerk should note the matter for **February 14, 2023**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed twelve (12) pages. The failure to timely object may affect the right to appeal.

DATED this 20th day of January, 2023.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13