HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HARMONY NASON,

                Plaintiff,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, and MARCIA FUDGE, *et al.*,

                Defendants.

Case No. 2:22-cv-00887-RAJ-BAT

**ORDER**

## I. INTRODUCTION

THIS MATTER is before the Court on remand from the Ninth Circuit. Dkt. # 60. Previously the Court dismissed Plaintiff's Complaint against Defendants with prejudice, finding the Court lacked subject matter jurisdiction to hear this matter. Dkt. # 52. As discussed below and in accordance with the Ninth Circuit's instructions, the Court

ORDER - 1

CONVERTS dismissal of Plaintiff's Complaint from a dismissal with prejudice to a dismissal without prejudice.

## II.   BACKGROUND

### A.   Facts of the Case

In May 1992, HUD financed the acquisition of three single-family homes throughout Snohomish County by Harmony House East Association, a non-profit organization ("Harmony House") ("the Project"). The financing included an initial grant and continuing rental subsidy for the Project to operate. The financing also involved a mortgage held by HUD and a Regulatory Agreement. Dkt. # 20, Decl. of Adela Escalante, Branch Chief for HUD, Office of Multifamily Housing, Property Disposition Division ("PD"). PD is responsible for managing and disposing of multifamily housing projects, through foreclosure sale, that are subject to a mortgage held by HUD. *Id*. The Project provided housing and supportive services to low-income, chronically mentally ill tenants.

The Project had twelve units scattered throughout the single-family homes located at 514 Powell Street, 16018 Dennis Way, and 12925 182nd Ave SE. Each address provided a group-home living for four tenants. Plaintiff moved into the Powell Street property around 2007. Dkt. # 1; Dkt. # 20, Escalante Decl. ¶¶ 5–6. Plaintiff did not receive HUD Section 8 assistance or any Section 8 benefits. Instead, Harmony House offered Plaintiff a lowered rent, based on her status and its policies as an independent non-profit organization. Plaintiff's rent was eventually set at $400 a month. *Id*., Dkt. # 19, Bohl Decl. ¶ 2.

In 2013, Plaintiff sued Harmony House in state court for a variety of claims related to its management of the Project. The court dismissed the case on summary judgment. *See Nason v. Hoban & Assocs., Inc*., 199 Wash. App. 1022 (2017) (affirming dismissal). In 2017, a state court granted Plaintiff's request for a restraining order against a housemate. Dkt. # 5-2 at 40. After this legal action, Harmony House had trouble

continuing operations and providing HUD-required services at the Project. Dkt. # 20, Escalante Decl. ¶ 7. The Project's marginal revenue and low unit count was not enough to provide the funding Harmony House needed to maintain the level of required services at the Project. *Id*.

In September 2017, Harmony House decided to dissolve due to lost rental revenue, increased operating costs, and increased costs due to Plaintiff's litigation. Dkt. # 5-2 at 31 ("We have also had 2 property managers terminate contracts with us over the past 8 years because of the behavior of a resident at the Powell house. This same resident refuses mediation but continues to make demands for reasonable accommodation that has prevented us from inspecting the unit she occupies for over 3 years."); Dkt. # 20, Escalante Decl. ¶¶ 8–9. HUD unsuccessfully attempted to find new management or a new owner for the Project. *Id*. ¶ 10. Harmony House's dissolution triggered a default and accelerated the mortgage. *Id*. ¶ 11.

In March 2019, HUD became mortgagee-in-possession. Dkt. # 20, Escalante Decl. ¶ 12. Shortly thereafter, HUD offered a voluntary relocation program for all residents, which included rental assistance through Tenant Protection Vouchers, financial assistance to move, counseling, and other assistance. *Id*.; Dkt. # 5-3, Nason Decl. at. 3-5. HUD repeatedly extended the offer for relocation services to Plaintiff, extended the time by which she had to reply, and explained that the relocation services would not always be available to her. Dkt. # 20, Escalante Decl. ¶ 13; Dkt. # 5-2 at 50. Plaintiff declined HUD's attempts to offer another housing opportunity. Plaintiff was the only Project tenant to refuse the relocation services. Dkt. # 20, Escalante Decl. ¶ 12.

In November 2020, HUD notified Plaintiff in writing, that it intended to foreclose on the property. Dkt. # 5-3, Nason Decl. at 11; Dkt. # 5-2 at 56. Although she objected and threatened to file a lawsuit to prevent the foreclosure, Plaintiff did not file anything,

and HUD held a nonjudicial foreclosure in October 2021. Dkt. # 5-3, Nason Decl. at 12; Dkt. # 5-2 at 63-65. At that time, Plaintiff owed HUD over $2,400.00 in back rent. Dkt. # 19, Bohl Decl. ¶ 4.

HUD sold the three properties to Safe IRA Properties LLC ("Safe") in December 2021. Dkt. # 5-3, Nason Decl. at 15-16; Dkt. # 12 at. 1, 10. The sale of the Powell Street property included a Foreclosure Use Sale Agreement ("Use Agreement") and three riders. The Use Agreement (Dkt. # 12 at 15-16) is required by federal regulations whenever HUD and a foreclosure buyer agree to terms. 24 C.F.R. § 27.20(d). The first rider (Dkt. # 12 at 17) is required by the Protecting Tenants at Foreclosure Act. 12 U.S.C. § 5220 note. The second rider ("Two-year Rent Protection for Pre-Existing Very Low-Income Tenants," Dkt. # 12 at 18) HUD included in its discretion, which it often does in foreclosures. Dkt. # 20, Escalante Decl. ¶ 17. And the third rider ("Rider of Enforcement," Dkt. # 12 at 19) is HUD's enforcement mechanism in addition to paragraph 10 of the Use Agreement ("Remedies for Non-compliance"). The first rider provided that Safe had to give any tenant 90-day notice prior to eviction. The second rider stated that Safe had to assess the income level of its residents and if they were very low income, it could not raise the rent for two years. The third rider allowed HUD to enforce all conditions agreed to between HUD and Safe.

Shortly after closing, the new owner, Safe, sent Plaintiff a notice of termination of tenancy and notice to vacate by April 30, 2022, giving her over 90 days as required by the rider and statute. Dkt. # 5-3, Nason Decl. at 16; Dkt. # 5-2 at 78. Safe never assessed Plaintiff's income level, but never charged her rent during this time. Dkt. # 20, Escalante Decl. ¶ 19; Dkt. # 19, Bohl Decl. ¶ 3.

On August 2, 2022, a Snohomish County Judge ordered Plaintiff's s eviction. Dkt. # 12 at 3. According to AUSA Bohl, the Snohomish County Sheriff's Office served

ORDER - 5

Plaintiff with an eviction notice dated August 15, 2022. Dkt. # 19, Bohl Decl. ¶ 2. Plaintiff confirms she was a defendant in an eviction case brought by Safe in Cause No. 22-2-03859-31 in Snohomish County Superior Court and she was evicted pursuant to that proceeding and is now homeless. Dkt. # 41, Nason Decl. at 3-4.

**B.     Plaintiff's Allegations**

In the Complaint, Plaintiff alleges the Project was run illegally for many years and the foreclosure sale of Harmony House was illegal. Dkt. # 5 at 3. HUD failed to monitor the requirement that a partner organization be secured to provide supportive services and allowed it to dissolve without providing tenants with a 12-month notice. *Id*. at 4. HUD "illegally obstructed" her FOIA requests to determine what HUD did to ensure the program succeeded. HUD also failed in its oversight of Harmony House contrary to HUD regulations. *Id*. In June 2019, Plaintiff received a HUD notice of foreclosure, relocation information, and another eviction threat notice. *Id*. at 5. In July 2019, HUD officials informed Plaintiff that she had two months to decide whether to voluntarily leave Harmony House and accept Housing Choice Vouchers. *Id*. Plaintiff asserts claims of breach of contract, violation of the Administrative Procedures Act ("APA"), various torts, and violation of Washington State Law Against Discrimination and of 42 U.S.C. § 8013.

**C.     Procedural Posture**

On June 27, 2022, Plaintiff filed her Complaint against Defendants Marcia Fudge, in her official capacity as Secretary of U.S. Department of Housing and Urban Development (collectively, the "Federal Defendants"). Dkt. # 5. On August 5, 2020, Plaintiff filed an emergency motion for equitable relief. Dkt. # 12. The Federal Defendants opposed the motion. Dkt. # 18. The Court denied Plaintiff's motion after

finding Plaintiff lacks standing and her claims are unlikely to succeed. Dkt. # 23 (R&R); Dkt. # 35 (Order Adopting the R&R).

On September 2, 2022, Defendants filed a motion to dismiss the Complaint. Dkt. # 24. Magistrate Judge Brian A. Tsucida recommended granting Defendants' Motion and dismissing the Complaint with prejudice for lack of subject matter jurisdiction. Dkt. # 43. After considering Plaintiff's objections and other filings (Dkts. # 49-51), this Court adopted Judge Tsuchida's Report & Recommendation in its entirety. Dkt. # 52.

Plaintiff appealed dismissal to the Ninth Circuit. Dkt. # 56. First, the Ninth Circuit determined, Plaintiff's "breach of contract and APA claims . . . fail for lack of redressability." Dkt. # 60 at 3. Second, the Court of Appeals found, "[t]o the extent that Nason's Complaint could also be read to seek an injunction "compel[ling] HUD to enforce the terms of [its] sales agreement and riders' with the purchaser, such a claim is moot" because a federal court lacks power to enforce the relevant contractual provision, which expired in December 2023. *Id* at 4. Third, the Ninth Circuit found that Nason lacked standing to the extent her APA claim sought "declaratory or injunctive relief related to HUD's alleged failure to provide 'proper oversight, monitoring, or inspection of the program" or "timely or proper notice of foreclosure[.]'" *Id*. (citations omitted)

The Ninth Circuit affirmed this Court's dismissal for lack of subject matter jurisdiction. Dkt. # 60 at 5. However, the Court of Appeals concluded the "the district court should have dismissed [Nason's] Complaint without prejudice" because generally dismissals for lack of subject matter jurisdiction are without prejudice. *See id*. at 5–6. Accordingly, the Ninth Circuit affirmed the decision and remanded the case to this Court with instructions to dismiss the Complaint without prejudice. *See id*. at 6.

### III.   DISCUSSION

The Ninth Circuit has remanded this matter with instructions to convert the dismissal of Plaintiff's Complaint with prejudice for lack of subject matter jurisdiction to a dismissal without prejudice.  *See* Dkts. # 60–61; *Nason v. U.S. Dep't of Hous. & Urb. Dev.*, No. 23-35388, 2025 WL 785205, at *2 (9th Cir. Mar. 12, 2025) (citing *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017)).

Accordingly, the Court hereby converts dismissal of Plaintiff's Complaint with prejudice, Dkt. # 52, to dismissal of Plaintiff's Complaint without prejudice.  The Court directs Plaintiff to file an Amended Complaint that provides support that this Court has subject matter jurisdiction to hear this case.  If Plaintiff intends to pursue her claims further, she must file the Amended Complaint within twenty-one (21) days of this Order.

### IV.   CONCLUSION

For the reasons stated above, the Court CONVERTS dismissal of Plaintiff's Complaint from dismissal with prejudice to dismissal without prejudice.  Plaintiff is permitted to amend the complaint in accordance with the instructions above.

Dated this 11th day of June, 2025.

The Honorable Richard A. Jones
United States District Judge